UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| BERKLEY REGIONAL INSURANCE COMPANY, | ) ) ) | |
| | ) | 2:18-CV-00077-DCLC |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| GREATER EASTERN CREDIT UNION, | ) ) ) | |
| Defendant | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Berkley Regional Insurance Company ("Berkley"), and Defendant, Greater Eastern Credit Union ("GECU") have each filed a Motion for Partial Summary Judgment [Docs. 32, 46] and supporting documents [Docs. 33, 34, 35, 47, 48, 49], pursuant to Rule 56 of the Federal Rules of Procedure. The parties have responded and replied to each motion, respectively [Docs. 57, 59, 64, 66]. Additionally, GECU filed a Supplemental Brief [Doc. 65] relating to Berkley's Motion for Partial Summary Judgment, to which Berkley then responded [Doc. 67]. These matters are now ripe for resolution.

**I.  Procedural and Factual Background**

In 2013, GECU applied for and Berkley issued a Financial Institution Bond for Credit Unions ("the Bond") [Doc. 1-3]. The Bond was a discovery bond, meaning that it covered any claim that was discovered during the period of the bond, including losses that occurred prior to the issuance of the Bond [Doc. 20, ¶ 38; Doc. 1-1, pg. 30]. On November 25, 2015, Sherry Allen, as CEO of GECU, signed an application to renew that Bond with Berkley [Doc. 1-4, Renewal

1

Application; Doc. 33, pg. 5-6; Doc. 57, pg. 3]. In that application, Allen answered "No" to Question 97, which asked "Does any director or officer of the Credit Union or its holding company have any knowledge of any pending loss(es) or any information that could give rise to a claim(s) that could be covered under the Bond or the MPL policies?" [Doc. 1-4, pg. 10; Doc. 33, pg. 6; Doc. 57, pg. 3]. Based on that application and Allen's responses, Berkley renewed the Bond for a period from February 6, 2016 to February 9, 2019 [Doc. 1-1, the Bond; Doc. 33, pg. 5, Doc. 57, pg. 3]. This policy covered "loss resulting directly from dishonest acts committed by an Employee or Director, acting alone or in collusion with others, with the intent to cause the Insured to sustain such loss, or obtain an improper financial benefit for the Employee, Director or for any other person or entity." [Doc. 1-1, pg. 6; Doc. 33, pg. 5; Doc. 48, pg. 2].

In November 2017, GECU began an internal investigation into Sherry Allen for fraudulent transactions involving GECU [Doc. 33, pg. 4; Doc. 48, pg. 4-5]. As a result, GECU sent a Notice of Potential Loss to Berkley on November 30, 2017 [Doc. 33, pg. 4; Doc. 48, pg. 5]. After a full investigation by an accounting firm, GECU submitted a sworn Proof of Loss statement to Berkley, stating that Allen "took unauthorized funds from [GECU] over the course of several years" and claimed a total loss of $1,258,626.10 [Doc. 33, pg. 4-5; Doc. 48, pg. 8]. On May 1, 2018, the United States filed a criminal Information against Sherry Allen, charging her with Theft by Credit Union Officer of Employee and Attempted Tax Evasion [Doc. 33, pg. 5]. Allen plead guilty to embezzling money from GECU from 2011 to 2017 and was sentenced in September 2018 [Doc. 33, pg. 5; Doc. 48, pg. 10-13].

On May 16, 2018, Berkley filed its Complaint and Request for Declaratory Judgment asking the Court to find that the Financial Institution Bond, No. CUB 6008984-11 that it had issued to GECU was properly rescinded and is null and void *ab initio* [Doc. 1, pg. 8]. Berkley also

requested an award of attorney's fees [*Id*.]. Berkley attached the Bond, the Proof of Loss statement from GECU, and the Applications for the Bond. On May 17, 2018, Berkley sent GECU a letter rescinding the Bond and a check for $17,661.00, representing the amount that GECU paid as a premium for the Bond [Doc. 8-5]. On May 18, 2018, Berkley filed an Amended Complaint, which was identical to the original Complaint but included an attachment of Berkley's letter to GECU rescinding the Bond [Doc. 8].

On July 9, 2018, GECU filed its Answer and Counterclaim against Berkley for breach of contract and bad faith [Doc. 14]. GECU also sought to interplead with the Court the amount returned to GECU as a refund for the premium paid.[1] On July 17, 2018, Berkley filed an Answer to the Counterclaim [Doc. 19] and also filed a Second Amended Complaint [Doc. 20], adding a claim for Reverse Bad Faith in response to GECU's Counterclaim. GECU answered the Second Amended Complaint on July 31, 2018.

On April 29, 2019, Berkley filed its Motion for Partial Summary Judgment [Doc. 32], memorandum of support [Doc. 33], and affidavits of support [Docs. 34, 35]. It claims that it properly rescinded the Bond pursuant to T.C.A. § 56-7-103 and Tennessee common law and that the Bond should be declared void *ab initio* based on a false answer given by Allen on the renewal application that increased its risk of loss. Therefore, Berkley seeks summary judgment on its claim for declaratory judgment and reverse bad faith on the part of GECU, as well as on GECU's counterclaims for breach of contract and bad faith.

On June 21, 2019, GECU filed its own Motion for Partial Summary Judgment [Doc. 46], memorandum of support [Doc. 47], statement of material facts [Doc. 48], and affidavit of support

---

[1] These funds have been deposited into the Court's registry pursuant to an Agreed Order [Doc. 23-1].

[Doc. 49], arguing that Allen's fraudulent answer on the application for renewal cannot be imputed to GECU and therefore, rescission is not proper. As such, it argues that Berkley breached the contract by refusing to pay the amount of the loss and rescinding the bond. GECU also seeks summary judgment on Berkley's claim for reverse bad faith and an award of attorney's fees [Doc. 46, pg. 2].

Each party responded and replied to the respective motions with corresponding arguments. These motions come down to whether or not Berkley's rescission of the Bond was proper. If so, then Berkley is entitled to an entry of declaratory judgment. If not, GECU's claim of breach of contract must prevail. Therefore, the Court will consider the arguments made in these motions and respective responses together as one.

## II. Standard of Review

Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ultimately, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The burden of proving that no genuine dispute of fact exists is strictly upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). As such, the court must consider the evidence and "draw all reasonable inferences in favor of the nonmoving party." *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253, F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

However, once the moving party has presented sufficient evidence to support summary judgment, the nonmoving party "must point to evidence in the record upon which a reasonable

finder of fact could find in its favor." *Machoka v. City of Collegedale*, No. 1:17-CR-203-TAV-CHS, 2019 WL 1768861, at *3 (E.D. Tenn. Apr. 22, 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party "may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Specifically, the alleged factual dispute must be material. *Anderson*, 477 U.S. at 248.

## III. Analysis

### A. Rescission and Breach of Contract

Berkley argues that pursuant to T.C.A. § 56-7-103 rescission is proper in this case.[2] This statute provides that

> No written or oral misrepresentation or warranty made in the negotiations of a contract of policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, *unless* the misrepresentation or warranty is made with actual intent to deceive, *or* unless the matter represented increases the risk of loss.

T.C.A. § 56-7-103 (emphasis added). This means that in order to void a policy, the insurance company must prove (1) that the insured made a written or oral misrepresentation and (2) that statement was made with actual intent to deceive *or* that it increased the risk of loss. *See Certain Underwriters at Lloyd's Subscribing to Policy No. LTP000034*, 2000 WL 977354, *3 (6th Cir. July 5, 2000); *State Farm General Ins. Co. v. Wood*, 1 S.W.3d 658, 661 (Tenn. Ct. App. 1999). The Sixth Circuit and the Tennessee Court of Appeals have held "[a] misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract." *Yarnell v. Transamerica*

---

[2] Both parties agree that Tennessee law is applicable in this case. *See* [Doc. 47, pg. 6; Doc. 59].

5

*Life Ins. Co.*, 447 F. App'x 664, 674 (6th Cir. 2011) (quoting *Lane v. Am. Gen. Life and Acc. Ins. Co.*, 252 S.W.3d 289, 295-96 (Tenn. Ct. App. 2007)). Further, "determining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court." *Yarnell*, 447 F. App'x at 674 (quoting *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006)).

In this case, Berkley argues that Allen, as CEO of GECU and its agent for purposes of applying for the Bond renewal, made a written misrepresentation when she falsely answered that no director or officer knew of any pending losses or any information that could give rise to a claim under the policy. GECU does not dispute that this was a false answer [Doc. 57, pg. 6]. The policy covered any loss resulting from dishonest acts committed by an employee or director. At the time when the application was signed and submitted to Berkley, Allen was embezzling from GECU. Therefore, she knew that there could be a claim under the policy as it could be based upon her own actions.

As to the second element of the statute, Berkley focuses on whether the misrepresentation increased the risk of loss under the Bond, i.e. that the misrepresentation was material. Berkley states that the question at issue "related directly to the risk that Berkley was potentially undertaking." [Doc. 33, pg. 8]. It argues that it would have never issued the Bond had the question been answered truthfully, as evidenced by the testimony of Lydia Fulmer, who was the underwriter directly involved in the issuance of the Bond [Doc. 33, pg. 17].

Tennessee courts "have held that a material misrepresentation by an insurance applicant exists when the misrepresentation is sufficient to deny the insurer of information it sought to discover and which it must have deemed necessary to an honest appraisal of insurability." *McPherson v. Fortis Ins. Co.*, 2004 WL 1123529, *5 (Tenn. Ct. App. 2004) (citing *Clingan v.*

*Vulcan Life Ins. Co.*, 694 S.W.2d 327 (Tenn. Ct. App. 1985)); *see also Howell v. Colonial Penn Ins. Co.*, 842 F.2d 821, 824 (6th Cir. 1987). "The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss." *Lane*, 252 S.W.3d at 296 (citing *Johnson v. State Farm Life Ins. Co.*, 633 S.W.2d 484, 487 (Tenn. Ct. App. 1981)). "[A] showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss." *Lane*, 252 S.W.3d at 296 (citing *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000)).

GECU also does not dispute that the question on the Bond application was material. It is obvious that Berkley would not have issued the Bond if it knew that its CEO was actively embezzling from GECU in a manner which would be covered by the Bond. If Allen had truthfully answered the question, that an officer did know of an ongoing fraud that would give rise to a claim under the Bond, Berkley would not have proceeded any further with insuring GECU.

Instead of arguing that Allen's misrepresentation was not material and did not increase Berkley's risk of loss, GECU argues that Allen's knowledge is not imputed to GECU pursuant to the adverse interest exception to general agency principles. GECU cites multiple cases that held under similar factual circumstances that the insurance company was not allowed to rescind the bond under the adverse interest exception. *See BancInsure, Inc. v. U.K. Bank Corp., Inc.*, 830 F. Supp. 2d 294 (E.D.Ky. 2011); *Everest Nat. Ins. Co. v. Tri-State Bankshares, Inc.*, 2016 WL 5062155 (W.D.La., Aug. 1, 2016); *National Credit Union Admin. Bd. v. Cumis Ins. Society, Inc.*, 241 F. Supp. 3d 934 (D. Minn. 2017). Berkley responds that these out-of-state cases are irrelevant because there is Tennessee Court of Appeals case which addresses the issue of imputation under

T.C.A. § 56-7-103. Berkley argues that as the statute does not require that Allen's statement be imputed to GECU, the adverse interest exception does not apply.

GECU does not contest that Allen had the authority to sign the renewal application for the Bond. By doing so, she bound GECU to the application, and Allen's knowledge is imputed to GECU under the traditional principles of agency. *See Griffith Motors, Inc. v. Parker*, 633 S.W.D2d 319, 322 (Tenn. Ct. App. 1982) ("The rule of law…charges a corporation with constructive knowledge regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment within the scope of authority, even though the officer or agent does not in fact communicate his knowledge to the corporation."). However, the adverse interest exception to this rule is "where the agent is dealing with the principal in his own interests or where his interests are adverse to that of the principal so that it is to his own advantage not to impart his knowledge to the principal." *Id*. In that circumstance, the exception would prevent the knowledge known by the agent from being imputed to the principal. In the case at hand, Allen would not want the knowledge that she was embezzling from the bank imputed to GECU. This was her motivation to answer falsely on the application, and GECU contends that it should be protected from her misrepresentation as such.

In response, Berkley argues that imputation is not necessary under the statute so there is no need to address the adverse interest exception. Berkley cites to *National Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.* as a controlling case addressing the issue of imputation under T.C.A. § 56-7-103. National Union insured United American Bank against any loss resulting from the actions of its directors or officers. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, 1995 WL 48462, *1 (Tenn. Ct. App. Feb. 8, 1995). Similarly to this case, the application included a question asking if "any Director or Officer have knowledge or information of any act, error, or

omission which gives rise to a claim under the proposed policy," to which the agent answered "no." *Id*. Subsequently, the bank closed, and the FDIC was appointed as receiver. *Id*. The FDIC later "notified National Union of various claims against the former directors and officers of the bank." *Id*. National Union rescinded the policy under T.C.A. § 56-7-103 for "material misrepresentations in the application for insurance" and filed suit for declaratory judgment. *Id*.

After being remanded on unrelated issues, the trial court granted summary judgment in favor of National Union, who argued that the rescission was proper under T.C.A. § 56-7-103. *Id*. at *2. In the trial court's Memorandum Opinion included in the Tennessee Court of Appeal's decision, the trial court found that, under the phrasing of the question at issue, it was irrelevant if the signer of the application had any knowledge or information of any such act, error, or omission which gives rise to a claim under the proposed policy. "The only issue is whether a Director or Officer in fact had knowledge of such an act, error, or omission." *Id*. at *7. The appellate court agreed with the trial court that this was the ultimate issue: "The application is the bank's application and not the application of the signatory officer. It is the bank that is charged with misrepresentation." *Id*. at *3. The court of appeals agreed that based upon the evidence, various officers and directors of the bank had knowledge of acts that would give rise a claim. *Id*. at *4. The trial court was "affirmed in all respects." *Id*. at *5.

In *National Union*, as in this case, the insurance company, through the questions it asked on the application, sought to determine its potential risk of loss in insuring the bank. Specifically, with the question at issue, it wanted to know whether any director or officer has knowledge of any potential claim under the policy. The application does not ask if the signee of the application has any knowledge of a potential claim or if the signee knows of any director or officer who has knowledge of a potential claim. The person who signs the application is irrelevant according to the

9

plain language of the question. As the insurance company is wanting to get the most accurate picture of the insured's financial well-being, it is seeking the knowledge of the bank as a whole.

The application for the bond in *National Union*, as well as the Bond in this case, included a warranty by the signee of the bond that the statements in the application were true to the best of his/her knowledge. The bond in *National Union* specifically noted that such warranty was made "after inquiry." *Id*. at *3. The appellate court stated that "the statement at the end of the application…is a statement made on behalf of the bank, by its authorized agent, that the agent has inquired as to the truthfulness of the matters therein asserted and to the best of his knowledge the statements are true." *Id*. In this case, the application states "that every reasonable effort has been made to obtain sufficient information to facilitate the proper and accurate completion of this application." [Doc. 1-3, pg. 18]. The intent is the same in each case. The insurance company expects that the insured, namely the bank, not the signee, will make "every reasonable effort" to make sure that the answers it provides are accurate.

Berkley argues that the Tennessee Court of Appeals in *National Union* is controlling in this case and this Court agrees. Both parties agree that Tennessee law governs in this case. In response, GECU does not argue against the controlling nature of the case but instead argues against its facts and its logic. *See* [Doc. 64, pg. 7-11]. However, the Court is not convinced.

First, GECU argues that this case is factually distinguishable from *National Union*. It states that as this was a fidelity bond instead of a Directors and Officers Liability policy and that the adverse interest exception was not addressed, the case should not apply. Additionally, GECU notes that the court in *National Union* noted that "the true condition of the bank was well-known to many, if not all, of the officers and directors…." 1995 WL 48462, at *4. Here, it argues, there is no evidence that anyone was aware of Allen's conduct.

However, the Court does not find that these facts were relevant in the Tennessee Court of Appeal's decision in *National Union* nor are they relevant in applying the decision to this case. First, while the bond type was different in the two cases at hand, the intent of the insurance company was the same in each case by seeking information on whether any director or officer had knowledge of a potential claim under the bond. The insurance company wanted to assess its potential risk of loss in issuing a policy to the bank. Second, the appellate court did not address the adverse interest exception, because it, like the Court here, found that imputation and the agency principles relating to such were unnecessary under the language of the statute and the language of the application. There was no need to address the adverse interest exception.

Lastly, the Court acknowledges the factual differences in the scheme perpetrated by the officers and directors in *National Union* compared to the fraud committed by Allen in this case. However, while the fraud in *National Union* was more widely known than in this case, that difference is not relevant. Whether only one director or officer knew of a potential claim under the policy or almost of all of the directors and officers knew of a potential claim, the answer on the application is still the same. The same duty was imposed on the bank: to accurately affirm that no director or officer knew of a potential claim under the policy.

Next, GECU argues that the result of allowing Berkley to rescind the Bond based on Allen's misrepresentation is "absurd." It posits that if an insurance company is allowed to rescind a Bond based on a false misrepresentation of an agent, regardless of whether the bank is bound by the misrepresentation under the adverse interest exception, then there would never be coverage under a discovery bond [Doc. 64, pg. 6]. As such, this would in effect render the Bond illusory, providing "Berkley with the complete and unrestricted power to cancel or not perform under the contract created by the Bond based on either a 'Yes' or 'No' response to Question No. 97." [Doc.

64, pg. 8]. GECU further argues that "[t]he interpretation of T.C.A. § 56-7-103 advanced by Berkley leads to an absurd result because it renders an otherwise valid contract void without taking into account whether the proposed insured is bond by the conduct that led to the facts on which Berkley seeks to void the Bond." [*Id.*].

This argument advanced by GECU is based on the underlying assumption its agent's misrepresentation should not be imputed to the principal. Additionally, this is a policy-based argument rather than a legal one. GECU does not provide any other controlling case law that contradicts the Tennessee Court of Appeals' holding in *National Union*. Instead, it argues that the result of shifting the loss to the bank rather than the insurance company is "absurd." Again, this Court disagrees. As this Court is bound by *National Union*'s finding that the signee's knowledge is irrelevant as to whether any director or officer has knowledge of any act that could give rise to a claim under the policy, the adverse interest exception does not apply in this case. As the appellate court in *National Union* held, "[t]he application is the bank's application… [and it] is the bank that is charged with misrepresentation."

In the context of a bank applying for insurance coverage, the bank is generally in the best position to make accurate representations about the financial conditions of the bank. The insurance company cannot do anything but attempt to ensure that the bank has made every effort to truthfully answer the questions on the insurance application. In this case, Berkley specifically inquired about what any director or officer may know about any potential claims. It also noted that it expected GECU to ensure that "every reasonable effort [was] made to obtain sufficient information to facilitate the proper and accurate completion of this application." GECU was on notice of Berkley's expectations. In this case, Allen had been embezzling from GECU since at least 2011, at least two years before the original bond was issued and at least five years prior to the renewal

application. Allen stole a total of approximately $1.25 million dollars from GECU over a seven-year period. GECU was in the best position to discover this fraud at some point during this period.

GECU also relies on Restatement (Second) of Agency § 280 cmt. c (1958) for further support for its theory of the adverse interest exception [Doc. 57, pg. 7].[3] The section states that "[i]f an agent has done an unauthorized act or intends to do one, the principal is not affected by the agent's knowledge that he has done or intends to do the act." Comment C allows for an exception:

> If, in order to protect himself against the embezzlement or other wrongdoing of an agent, the principal obtains a contract of indemnity which states that the signer has no knowledge of any prior wrongdoing by the agent, the knowledge of his own embezzlement by the agent who signs the contract is not imputed to the principal. The risk of embezzlement by dishonest agents is the risk insured against and it would defeat the purpose of the contract to bind the principal by the knowledge such agents.

However, Berkley states that this comment and the idea it conveys is not included in the Restatement (Third) of Agency that was ratified in 2006. Instead, in the updated Restatement, § 5.04 provides that even if the agent acts adversely to the principal, "notice is imputed (a) when necessary to protect the rights of a third party who dealt with the principal in good faith; or (b) when the principal has ratified or knowingly retained a benefit from the agent's actions." This updated restatement reinforces that in the situation where both the bank and the insurance company are innocent parties relating to an agent's misrepresentation, the bank is the party who should bear the risk of loss.

---

[3] GECU actually cites to Restatement (Second) of Agency § 820. However, as Berkley notes in its reply [Doc. 66, pg. 7], this appears to be a typographical error.

As there is no dispute that Allen, as an agent for GECU, lied on the application and that her dishonesty pertained to a matter which increased the risk of loss to Berkley, the Court must conclude that, pursuant to T.C.A. § 56-7-102, Berkley properly rescinded the bond.

**B. Bad Faith Claims**

In its Counterclaim, GECU asserts that "Berkley's failure to pay the amounts contractually owed to GECU under the Bond is arbitrary, capricious and constitutes bad faith pursuant to [T.C.A] § 56-7-105." [Doc. 14, ¶ 34].

> To be successful in § 56-7-105 action, a plaintiff must establish the following: (1) "the policy of insurance must, by its terms, have become due and payable," (2) "a formal demand for payment must have been made," (3) "the insured must have waited [sixty] days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the [sixty] days)," and (4) "the refusal to pay must not have been in good faith.

*Cox v. Erie Insurance Exchange*, 2019 WL 6529164, at *4 (W.D. Tenn. Dec. 4, 2019) (quoting *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 360-61 (6th Cir. 2018)). "An insurance company is entitled to rely upon available defense and refuse payment if there [are] substantial legal grounds that the policy does not afford coverage for the alleged loss." *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 852 (Tenn. Ct. App. 1982). Here, as the Court has found that Berkley properly rescinded the Bond, Berkley's action in denying payment under the Bond was in good faith. Therefore, GECU's claim for bad faith must fail.

In response to GECU's counterclaim, Berkley filed a second amended complaint which included a claim of "reverse bad faith" under the same statute. However, based on the same "made in good faith" standard, the Court cannot find that GECU's defense was in bad faith. While Berkley ultimately prevailed on this issue, this does not mean that GECU's defense was frivolous or in bad faith. Both parties presented arguments with substantial legal grounds to support their positions. *See Ginn v. American Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). GECU

simply unsuccessfully asserted its defense. *See id*. Therefore, the Court also finds that Berkley cannot succeed on its claim for reverse bad faith.

**C. Attorney's Fees**

Finally, Berkley claimed that it "is entitled to recover its reasonable attorneys' fees in filing and prosecuting this action" under 28 U.S.C. § 2202 [Doc. 20, ¶ 33]. This statute simply allows for "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202. In the Second Amended Complaint, Berkley simply argues that it had to retain counsel in order to bring this action to obtain declaratory judgment [Doc. 20, ¶ 33]. In its Motion for Partial Summary Judgment, GECU asserts that Berkley's claim for attorney's fees should be dismissed as Berkley has not shown that such an award is proper under the statute or the traditional American Rule [Doc. 47, pg. 20-21]. Berkley did not respond to this argument.

While the Sixth Circuit has not addressed awarding attorney's fees under 28 U.S.C. § 2202, other circuits have held that this statute does not create an independent basis for attorney's fees and costs. *See Schell. OXY USA Inc.*, 814 F.3d 1107, 1127-28 (10th Cir. 2016); *Mercantile Nat. Bank at Dallas v. Bradford Trust Co.*, 852 F.2d 215, 217 (5th Cir. 1988); *National Merchant Center, Inc. v. MediaNet Group Technologies, Inc.*, 893 F.Supp.2d 1054, 1056-58 (C.D. Cal. 2012); *State Farm Mut. Auto. Ins. Co. v. Scott*, 866 F.Supp.2d 680, 690-91 (S.D. Tex. 2012); *National Union Fire Ins. Co. of Pittsburg, Pa. v. Structural Systems Technology, Inc.*, 764 F.Supp. 145, 147 (E.D. Mo. 1991). Additionally, Tennessee follows the American rule for awarding attorney's fees and costs. "Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies…." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

As the Court finds that an award of attorney's fees is not warranted under 28 U.S.C. § 2202 and that Berkley has not plead any contractual or statutory provision that would entitle it to such an award, the Court finds that this claim must be dismissed.

## IV. Conclusion

For the reasons set forth above, the Court shall **GRANT** in part and **DENY** in part Berkley's Motion for Partial Summary Judgment and **GRANT** in part and **DENY** in part Defendant's Motion for Partial Summary Judgment. As such the Court finds that:

1. The Financial Institution Bond, No. CUP 6008984-11 is DECLARED and ADJUDGED rescinded and is null and void *ab initio*;
2. GECU's counterclaims of Breach of Contract and Bad Faith are hereby DISMISSED with prejudice;
3. GECU's counterclaim for Interpleader is hereby DISMISSED as moot; and
4. Berkley's claims for Reverse Bad Faith and Attorney's Fees and Costs are hereby DISMISSED with prejudice; and
5. The Clerk is DIRECTED to release the funds to GECU that were interpleaded into the Registry of the Court according to the Order of Disbursal filed herewith.

Plaintiff has also filed a Motion in Limine [Doc. 77]. Defendant has filed three Motions in Limine [Docs. 79, 80, 81]. As the Court is granting declaratory judgment as related to the Bond and dismissing all other claims and counterclaims, these motions are **DENIED** as moot. A separate order dismissing this case shall enter.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge